**In re Joseph A. MONACO, Jr., Doris K. Monaco, Debtors.**

**In re John KELLY d/b/a Kelly Refrigeration, Anne Kelly, Debtors.**

**Bankruptcy Nos. 80–13099 M, 83–12059 M.**

United States Bankruptcy Court, W.D. New York.

Feb. 26, 1985.

Albert W. Foley, Dunkirk, N.Y., Trustee in Bankruptcy of Joseph A. and Doris K. Monaco.

Robert Abrams, Atty. Gen., Buffalo, N.Y., of the State of New York (Louis J. Gicale, Jr., Asst. Atty. Gen., Buffalo, N.Y. of counsel) for New York State Dept. of Taxation and Finance in the case of Joseph A. and Doris K. Monaco.

Gerald B. Cohen, Buffalo, N.Y. (Howard Kleiman, Buffalo, N.Y., of counsel) for debtors John and Anne Kelly.

Robert Abrams, Atty. Gen., Buffalo, N.Y., of the State of New York (Patrick O. McCormack, Asst. Atty., Gen., Buffalo, N.Y., of counsel) for New York State Dept. of Taxation and Finance in the case of John and Anne Kelly.

BERYL E. McGUIRE, Bankruptcy Judge.

Each of these two consolidated cases raises the single issue of whether a sales tax obligation to the State of New York is to be allowed under Bankruptcy Code § 507(a)(6)(C) [1], as a tax required to be collected and for which the debtor is liable, or under § 507(a)(6)(E) [2], as an excise tax. Section 507(a) sets forth a description of the types of debts which have priority in the distribution of assets of a bankruptcy

---

**1.** Although § 507(a)(6)(C) was renumbered § 507(a)(7)(C) by P.L. 98–353 (July 10, 1984), references in this opinion are to the former numbering to avoid confusion in comparing earlier authorities.

**2.** Although § 507(a)(6)(E) was renumbered § 507(a)(7)(E) by P.L. 98–353 (July 10, 1984), references in this opinion are to the former numbering to avoid confusion in comparing earlier authorities.

estate, and specifies the order in which they are to be paid. The sixth priority [section 507(a)(6) ] deals with taxes. Although the language and the legislative history of these subsections perhaps is not crystal clear, this Court is persuaded that the sales tax debts should be allowed as excise taxes under section 507(a)(6)(E), and not as taxes required to be collected, etc. under section 507(a)(6)(C).

In the case of Joseph A. Monaco, Jr. (d/b/a Monaco's Friendly Service) and Doris K. Monaco [BK # 80–13099], the debtors filed a petition seeking relief under chapter 13 of the Bankruptcy Code on November 13, 1980, and the case was converted to chapter 7 on consent of the debtors on November 5, 1982. On June 23, 1982, the New York State Department of Taxation and Finance filed a proof of claim (identified as claim # 67) and, on May 9, 1984, it filed an amended proof of claim (identified as claim # 71). As amended, the State's sales tax claim covers the period from October 1, 1975 through November 30, 1977, for a total amount of $18,600.97. On August 7, 1984, Albert W. Foley, Esq., trustee of the chapter 7 estate filed an objection to the State's sales tax claim and, on August 21, 1984, Louis J. Gicale, Esq., Assistant New York State Attorney General, filed an affidavit in opposition to the trustee's objection. A hearing was held on September 5, 1984.

In the case of John Kelly (d/b/a Kelly Refrigeration) and Anne Kelly [BK # 83–12059], the debtors filed a petition seeking relief under chapter 13 of the Bankruptcy Code on October 7, 1983. On January 9, 1984, the New York State Department of Taxation and Finance filed a proof of claim (identified as claim # 3) in the amount of $6,002.53, for unpaid sales tax covering periods from June 1978 through April 1983. The claim was filed as one entitled to priority under section 507(a)(6)(A) of the Bankruptcy Code. On February 11, 1984, counsel for the debtor filed an objection to this claim. A hearing was held on March 27, 1984, and an in-chambers conference with counsel took place on June 1, 1984. Coun-

sel has orally stipulated to the relevant facts and filed memoranda of law.

Decision has been reserved in both cases. In neither case is there any dispute as to the facts or as to the amount owed.

## I

·This Court has jurisdiction to enter final orders resolving these consolidated contested matters under § 507, Title 11 U.S.C. Determination (and classification) of claims is a core proceeding pursuant to § 157(b)(2)(B), Title 28 U.S.C. (as amended by P.L. 98–353, July 10, 1984).

## II

The State's position is that sales tax obligations owing to New York State are trust funds in the hands of retailer debtors and are therefore entitled to the priority provided by subdivision (C) of section 507(a)(6). The debtors and trustee contend that not only is the sales tax an excise tax, but, more importantly, that excise taxes are in subdivision (E) of section 507(a)(6), **to the exclusion of subdivision (C).**

The impetus for the fervent dispute presented in these cases is the fact that excise taxes [of subdivision (E) ] are entitled to priority only if they became "last due after three years before the date of the filing of the petition [in bankruptcy]", whereas taxes under subdivision (C) maintain their priority status regardless of when they became due. The total amount due in the Monaco case ($18,600.97) and more than one-third of the total amount due in the Kelly case ($2,299.45 of $6,002.53) are beyond the three year time period and, therefore, would be treated as general unsecured claims, if treated within subdivision (E).

## III

There is no question that in New York State the sales tax obligation is one which the seller is required to collect or withhold and for which the seller is always liable. *See,* Tax Law § 1132(a), Article 28 of N.Y. Statutes, and *Canale v. N.Y.S.,* 84 Misc.2d

786, 378 N.Y.S.2d 566 (1975). Hence, the State sales tax obligation might, arguably, fall within the literal language of subsection 507(a)(6)(C). If so, however, that subpart is in conflict with subpart (E) which also literally includes sales tax obligations. The legislative history and the authorities which have addressed this question persuade this Court, first, that subsection (E) was drafted with the specific intent of including a sales tax such as that in effect in New York State, and, second, that subsection (C) as enacted covers only so-called "trust fund taxes" and does *not* include sales taxes. Parenthetically, it is appropriate to note that this Judge has ruled twice that New York's sales tax is an excise tax.[3]

In light of the contrary decision of the Seventh Circuit Court of Appeals in *Rosenow v. State of Illinois Department of Revenue*, 715 F.2d 277, 10 B.C.D. 1332 (1983) (from which much of the State's argument flows), a thorough analysis of the distinction between subsections (C) and (E) is warranted. The disputes confronted by the Seventh Circuit arose in the context of the dischargeability of the debtors' sales tax liabilities; issues which are correlative to the priority issues here involved. Since that opinion defines the issues with clarity and succinctly reviews prior decisions addressing the question, it is appropriate to quote from it at some length.

A resolution of this question requires a preliminary discussion of the treatment of taxes, to the extent relevant to the matter before us, under the Bankruptcy Reform Act of 1978. Both excise taxes and taxes on gross receipts are dischargeable if they became due more than three years prior to filing of a bankruptcy petition. 11 U.S.C. §§ 507(a)(6)(E) ("Section E"), (A). Section 507(a)(6)(C) ("Section C"), however, describes certain types of taxes which are to be given

priority without any limitation upon the time when they became due; and taxes within that section are also included in the exceptions to discharge listed in 11 U.S.C. § 523(a)(1)(A). These taxes, which may never be discharged, no matter how "stale" they become, are those "required to be collected or withheld and for which the debtor is liable in whatever capacity." 11 U.S.C. § 507(a)(6)(C).

The broad language of Section C has given rise to certain problems of interpretation, since some of the excise taxes referred to in Section E may also be taxes on retail sales collected by retailers on behalf of purchasers. This seeming ambiguity has led one court to conclude that all sales taxes should be treated as excise taxes and thus dischargeable when stale. *In re Tapp*, 16 B.R. 315 (Bkrtcy.D.Alaska 1981). Other courts have concluded that sales taxes collected by retailers are not dischargeable. *In re Fox*, 609 F.2d 178 (5th Cir.), *cert. denied*, 449 U.S. 821, 101 S.Ct. 78, 66 L.Ed.2d 23 (1980); *Lawrence v. Lindley*, 65 Ohio St.2d 105, 418 N.E.2d 1351 (1981).

The legislative history of Section C is somewhat confusing. It is clear that Section C was intended to include the so-called "trust fund taxes"—a term of art which includes income taxes an employer is required to withhold from employees' pay and the employees' share of social security taxes, *see, e.g.*, S.Rep. No. 989, 95th Cong., 2d Sess. 71 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787. However, the plain language of Section C is not confined to "trust fund taxes." It is true, and it is appellants' strongest contention, that the floor manager of H.R. 8200, which ultimately became the new bankruptcy code, referred only to such traditional "trust fund taxes" when

---

**3.** *See, In re E.W. Edwards & Son, Inc.*, 73–BK–945 (N.D.N.Y., October 25, 1977) [entered by this Judge while sitting, by designation, in the Northern District of New York]; and *In re Deer Head Mobile Homes, Inc.*, BK–74–3315 (W.D. N.Y., December 6, 1978).

*See also, In re Lor-Cel*, BK–81–12268 C (W.D. N.Y., March 25, 1983) [decision of John W.

Creahan, U.S.B.J.; in accord with *E.W. Edwards & Son, Inc.* and *Deer Head Mobile Homes, Inc.*, *supra*.]

A decision seemingly to the contrary, *In re Peter C. and Susan M. DeChiaro*, BK #83–10260 (Bankr.Ct., N.D.N.Y., June 24, 1984), *aff'd.* Civ. No. 84–CV–1148 (D.C., N.D.N.Y., November 13, 1984) should be acknowledged.

discussing Section C; and, when he described the excise taxes covered by Section E, he specifically listed sales taxes. 124 CONG.REC. 32,415, 32,416 (remarks of Rep. Edwards, September 28, 1978). On the other hand, Representative Edwards did not state that sales taxes or excise taxes were intended to be excluded from Section C nor did he say that sales taxes collected by a retailer must be treated under Section E.

In the Senate, Section C was discussed in the reports of two separate committees, the Committee on the Judiciary and the Committee on Finance. Both these reports specified that sales taxes collected by a retailer were intended to fall within the coverage of Section C. The Senate Finance Committee's report stated that Section C "also includes [in addition to trust fund taxes] excise taxes which a seller of goods or services is required to collect from a buyer and pay over to a taxing authority." S.Rep. No. 1106, 95th Cong., 2d Sess. 16 (1978). The Senate Judiciary Committee's report contains identical language. S.Rep. No. 989, 95th Cong., 2d Sess. 71 (1978). The Senate reports thus underline the fact that there are really two types of sales tax liabilities at issue: those which are owed personally by a debtor, for example, on purchases he himself has made, and those incurred by a retailer's customers, which are collected by the retailer under the authority of the state and then owed by the retailer to the state. In relation to the latter, the retailer in fact appears to be holding for the benefit of the state taxes which his customers would otherwise owe—an obvious similarity to the income and social security taxes ("trust fund taxes") which are unquestionably covered by Section C.

*In re Tapp*, 16 B.R. 315, cited to us by the debtors here as direct authority for the dischargeability of sales taxes over three years due, does not attempt to make this important distinction between taxes personally owed and those owed by a retailer as a collector for the state. Instead, *Tapp* relies heavily on floor manager Representative Edwards' comments and ignores the Senate reports discussed above. The Bankruptcy Court's opinion also omits, for whatever reason, any discussion of prior judicial interpretations of the comparable section of the predecessor statute, Section 17a(1) of the Bankruptcy Act, 11 U.S.C. § 35(a)(1). Section 17a(1) provided that taxes "which the bankrupt has collected or withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over" were not dischargeable in bankruptcy. 11 U.S.C. § 35(a)(1)(e). Interpreting this provision, which is very similar to the present Section C, the Fifth Circuit has held that not only social security and income taxes but also state sales taxes collected by sellers from purchasers are nondischargeable. *In re Fox*, 609 F.2d at 181. The *Fox* court's conclusion was followed by the Ohio Supreme Court in *Lawrence v. Lindley*, 418 N.E.2d at 1353. We think it appropriate to rely upon these precedents, as well as upon our impression that the two Senate reports, which are consistent with each other, provide an indication of congressional intent which is both more reliable and more complete than the inexplicably differing statements of the House floor manager. We also, of course, rely on the plain language of Section C to conclude that excise taxes which a retailer has collected from purchasers are nondischargeable despite their age. [Footnotes omitted.]

715 F.2d at 279–280.

The result reached in *Rosenow, supra,* has natural appeal. The situation of a business debtor collecting a sales tax from its sales is not unlike that same business debtor collecting withholding and social security taxes from its employees' wages. However, the striking of a balance among the policies of affording an insolvent debtor the opportunity for a fresh financial start, the interests of creditors not enjoying priority, and the interests of sovereigns

as tax collectors often requires fine distinctions.

In order to test the *Rosenow* rationale, it is necessary to understand historically the policies Congress has attempted to implement within the framework of bankruptcy relief. Prior to 1966, the Bankruptcy Act was very sympathetic and supportive of the efforts of tax collectors. The 1966 amendments to sections 17(a)(1) and 64(a)(4) [former §§ 35(a)(1) and 104(a)(4), Title 11 U.S.C.] demonstrate considerable softening of this pro-tax collector attitude.[4] An awareness of the evolution of the current stance of Congress vis-a-vis the balancing of tax collection, the interests of nonpriority creditors and bankruptcy relief provides the groundwork for understanding the priority scheme of the present section 507(a)(6). As will be demonstrated, reconsideration of the balancing of these interests at the time the Reform Act of 1978 was enacted again required great compromise between the House and Senate.

4. The 1966 amendments to §§ 17 and 64 of the Bankruptcy Act [§§ 35 and 104, Title 11 U.S.C.], in pertinent part, provided:

**§ 17. Debts Not Affected by a Discharge.** a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy: *Provided, however,* That a discharge in bankruptcy shall not release a bankrupt from any taxes.

**§ 64. Debts Which Have Priority.** a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be

\* \* \* \* \* \*

(4) taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof which are not released by a discharge in bankruptcy: *Provided, however,* That no priority over general unsecured claims shall pertain to taxes not included in the foregoing priority: *And provided further,* That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court; .

By 80 Stat. 271 (1966), effective October 3, 1966, a limitation on tax priority was established [in § 64(a)(4)]. The same legislation amended § 17(a)(1) to make nondischargeable only those taxes due three years prior to bankruptcy.

These amendments are explained in House Report No. 687, 89th Cong. 1st Sess., as follows:

*Frequently, [nondischargeability of taxes] prevents an honest but financially unfortunate debtor from making a fresh start unburdened by what may be an overwhelming liability for accumulated taxes.* The large proportion of individual and commercial income now consumed by various taxes makes the problem especially acute. *Furthermore, the nondischargeability feature of the law operates in a manner which is unfairly discriminatory against the private individual or the unincorporated small businessman.* Although a corporate bankrupt is theoretically not discharged, the corporation normally ceases to exist upon bankruptcy and unsatisfied tax claims, as well as all other unsatisfied claims, are without further recourse even though the enterprise may continue in a new corporate form.

The committee believes, therefore, that *consistency with the rehabilitory purpose of the Bankruptcy Act, as well as fairness to individuals demands some time limit upon the extent of taxes excepted from discharge. The committee recognizes the fact that different types of taxes present different problems to tax collectors.* The accuracy of some types of tax returns can be determined immediately. Others, like income taxes, require some time to audit. Rather than attempt a classification of the enormous variety of Federal, State, municipal, county, city, village, and various district taxes for the purpose of establishing varying limits on dischargeability, the committee set a 3-year period for all taxes. It is believed that such a period will not impose an unrealistic or unfair burden upon the tax authorities in auditing returns and assessing deficiencies. In fact, the period coincides with the 3-year statute of limitations for assessments in Federal income tax cases. *The fact that tax claims for the 3 years preceding bankruptcy will not be discharged should serve to discourage recourse to bankruptcy as a facile device for evading tax obligations.* At the same time it will become feasible for an industrious debtor to re-establish himself as a productive and taxpaying member of society. [Emphasis added.]

\* \* \* \* \* \*

The committee believes that limiting tax priority to those taxes which became due and owing within 3 years preceding bankruptcy adequately safeguards the public's interest in the collection of revenues while at the same time limiting the impact of long accumulated unsecured tax claims on general creditors. The imposition of such a limitation will induce taxing authorities to act to prevent large accumulations of tax claims.

The *Rosenow* court focused not upon the House Judiciary Report [5], but upon the reports of the Senate Judiciary Committee and Senate Finance Committee.[6] The court

5. The House Judiciary Report of September 8, 1977 includes the following explanatory comment with regard to enacted § 507(a)(6):

Under present bankruptcy law, taxes that become legally due and owing within three years before the date of bankruptcy are granted priority in payment, and are made nondischargeable. The priority and discharge provisions apply equally to Federal, State and local taxes. A taxing authority is given preferred treatment because it is an involuntary creditor of the debtor. It cannot choose its debtors, nor can it take security in advance of the time that taxes become due. The Bankruptcy Act gives the taxing authority three years to pursue delinquent debtors and obtain secured status. If a debtor files bankruptcy before that three-year period has run, the taxing authority is given a priority in order to compensate for its temporarily disadvantaged position.

There is an additional reason for the priority. Because it takes a taxing authority time to locate and pursue delinquent tax debtors, taxes are made nondischargeable if they become legally due and owing within three years before bankruptcy. An open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due. *The priority is tied to this nondischargeability provision, in order to aid the debtor's fresh start. By granting the nondischargeable tax a priority, more of it will be paid in the bankruptcy case, leaving less of a debt for the debtor after the case.*

*H.R. 8200 modifies current law with respect to the tax priority.* The kinds of taxes entitled to priority under H.R. 8200 closely follows the categories granted priority under the Bankruptcy Act, though taxes that are fines or penalties are not entitled to priority, even to the extent of actual pecuniary loss. *The bill also retains the coordination between the priority and discharge provisions as necessary to the debtor's fresh start. However, it reduces the priority period from three years to two years for employment and withholding taxes and to one year for all other taxes other than income taxes. Because of the difficulty of auditing and collecting income taxes, the priority is left at three years. However, with respect to other taxes, such as customs, excise, and property taxes, it is easier for a taxing authority to discover a delinquency and easier to audit, because the computations necessary to determination of those taxes are not as intricate as those necessary for income taxes.* [Emphasis added.]

\* \* \* \* \* \*

The time limit is imposed because the taxing authority should not be given priority for taxes that are unassessed or uncollected through a lack of due diligence.

\* \* \* \* \* \*

The fifth category of the tax priority is for excise taxes on a transaction occurring before the petition for which a return is last due after one year before the petition. The bill also grants a comparable one-year priority if a return is not required. The three-year priority is reduced to one year because of the reduced burden placed on the Internal Revenue Service by comparison with the income tax. The tax priority is rounded out by provision for providing a one-year priority for customs duties.
Statement of David H. Williams, Attorney, Division of Special Projects, Bureau of Consumer Protection, Federal Trade Commission; Appendix I, § VII(d), H.R. 95–595, 95th Cong., 1st Sess. (1977) [at pp. 189–90 of Rep. 585, in *Collier on Bankruptcy*, 15th ed., App. 2].

6. The Senate Judiciary Report (of 7/14/78) accompanying these proposed subsections provides in pertinent part:

Employment taxes and transfer taxes (including gift, estate, sales, use and other *excise* taxes) are also given sixth priority if the transaction or event which gave rise to the tax occurred before the petition date, provided that the required return or report of such tax liabilities was last due within 3 years before the petition was filed or was last due after the petition date (§ 507(a)(6)(A)(ii).)

\* \* \* \* \* \*

Taxes (*not covered by the third priority*) which the debtor was required by law to withhold or collect from others and for which he is liable in any capacity, regardless of the age of the tax claims (§ 507(a)(6)(D)) are included. *This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, the employees' shares of social security and railroad retirement taxes, and also Federal unemployment insurance. This category also includes excise taxes which a seller of goods or services is required to collect from a buyer and pay over to a taxing authority.* [Emphasis added.]
S. 2266, S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News, 1978, pp. 5787, 5856–5857, Calendar No. 1026 [at p. 70 in "V.S.Rep. 989" of *Collier on Bankruptcy*, 15th ed., App. 3].
The Senate Finance Committee Report (of 8/10/78) added the following:

4. *Prepetition tax liabilities of the debtor.*—Paragraph (6) of section 507(a) provides the general tax priority for prepetition taxes. These taxes, which the tax authority can claim against the estate as sixth priority items, cover the unsecured claims listed below.

\* \* \* \* \* \*

then found itself perplexed by the remarks of Congressman Edwards which described the effects of the compromise and which did not square with those reports.[7] The *Rosenow* decision fails to take into account the events which had occurred in the House of Representatives. The House and Senate versions of section 507, as one would expect, differed dramatically in approach. The House report accompanying the House bill reflects an intent to further modify "and reduce" the prior advantages of the tax collector vis-a-vis the other creditors (and, concomitant therewith, to enhance the debtor's opportunity for a fresh financial start). The focus of the House bill was an attempt to gauge the difficulty of monitoring tax compliance and to limit priority (and, hence, dischargeability) only to instances where the tax collector had not had a reasonable opportunity to enforce compliance. Indeed, in the context of the issue before this Court, it should be noted that section 507(c) in this House version specifically referred to trust fund taxes. ["Appendix A" of this opinion sets forth each bill and the enacted provision adjacent to one another for easy comparison.]

On the other hand, the Senate bill (which the *Rosenow* court focused upon) would have returned to the taxing authorities the priority they enjoyed prior to the 1966 amendments. Hence, construction of subsections (C) and (E) must begin with an awareness that enactment of these subsections was the product of compromise and that the two bills had conflicting goals.

The *Rosenow* rationale breaks down, in this Court's view, because it fails to take account of the breadth and nature of the compromise which led to the enacted provision. Section 507(a)(6)(E), drawn from the House bill, clearly encompasses all sales taxes. Its explicit terminology in mentioning returns undercuts the view that it was not meant to apply to third party withholding. Not only did Congressman Edwards state that it applies to sales taxes, but his counterpart in the Senate, Senator DeConcini said precisely the same thing (a most significant fact, and one apparently overlooked in *Rosenow*).[8]

c. Taxes for which the last due date of the return was more than 3 years before the filing of the title 11 petition, but which were assessed within 3 years after the last due date of the return and within 240 days before the petition was filed. This rule brings into the sixth priority tax liabilities for some years which would not qualify for priority under the general 3-year rule of section 507(a)(6)(A)(i) (sec. 507(a)(6)(B)(i)).

\* \* \* \* \* \*

g. Taxes (not covered by the third priority) which the debtor was required by law to withhold or collect from others and for which he is liable in any capacity, regardless of the age of the tax claims (sec. 507(a)(6)(D)). This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' shares of social security and Federal unemployment insurance. This category also includes excise taxes which a seller of goods or services is required to collect from a buyer and pay over to a taxing authority.

In addition, this category includes the liability of a responsible officer under the Internal Revenue Code (sec. 6672) for income taxes or for the employees' share of employment taxes which that officer was responsible for withholding from the wages of employees and paying to the Treasury, although he was not himself the employer. This priority will operate when a person found to be a responsible officer has himself filed in title 11, and the priority will cover the debtor's responsible officer liability regardless of the age of the tax year to which the tax relates. The U.S. Supreme Court has interpreted present law to require the same result as the rule under S.2266. *U.S. v. Sotelo*, 436 U.S. [268, 98 S.Ct. 1795, 56 L.Ed.2d 275] (1978).

\* \* \* \* \* \*

The employer's share of the employment taxes on wages earned and paid before the bankruptcy petition will receive sixth priority to the extent the return or report for these taxes was last due within 3 years before the filing of the petition. Older tax claims of this nature will be payable as general claims.
S. 2266, S.Rep. 95–7106, 95th Cong., 2d Sess. 1978 [at pp. 14–16 of "V1. S.Rep. 1106", in *Collier on Bankruptcy,* 5th ed., App. 3].

7. *Rosenow,* 715 F.2d at 280 (reproduced in text, *supra*). *See,* footnote 8 *infra.*

8. After the Senate adopted its amendment in the nature of a substitute to H.R. 8200 and sent the bill back to the House, the floor managers in both Houses met and agreed upon a compromise bill. The bill was adopted by the House on September 28, 1978, as an amendment in the nature of a substitute to the Senate amendment to the House bill H.R. 8200. The floor manag-

It is true that the explicit reference to trust fund taxes, found in (C) of the House bill is deleted from enacted section 507(a)(6)(C), but both Congressman Edwards and Senator DeConcini took the floor in the House and in the Senate to make it abundantly clear that (C) applied only to "trust fund taxes" as it had in the House bill.[9] As noted by the Seventh Circuit in *Rosenow,* the term "trust fund taxes" is a term of art which does not include sales taxes.

It appears to this Court that in the compromise between the House and Senate bills, the amendment substitution committee[10] gave the Senate the unlimited priority for "trust fund taxes" [§ 507(a)(6)(C)] which its bill had sought, but segregated excise taxes out of that category. Excise taxes were then placed in a new provision [§ 507(a)(6)(E)] which was not present in the original Senate bill. This latter provision does have a time bar, as the House favored. The resolution not only gave each side part of what it wanted, it also made good policy sense in light of the relative difficulty in assessing, auditing and collecting the different types of taxes.[11]

---

ers also agreed on a joint explanatory statement, which each published in the Congressional Record immediately following the actual floor debates on the compromise bill. This joint explanatory statement of the managers explains the compromises that were reached and the interpretations of the new language. It also resolves some of the differences between the House and Senate Judiciary Committee Reports. It is similar in function and purpose to the Joint Explanatory Statement of Managers that accompanies a formal Conference Report of a Committee of Conference, and its effect should be the same. *Collier on Bankruptcy,* 15th ed., App. 3, p. IX–1.

Both Congressman Edwards and Senator DeConcini stated as follows:

Section 507(a)(6) of the House amendment represents a compromise between similar provisions contained in H.R. 8200 as passed by the House and the Senate amendment.

\* \* \* \* \* \*

Fifth. Taxes which the debtor was required by law to withhold or collect from others and for which he is liable in any capacity, regardless of the age of the tax claims. This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes.

In addition, this category includes the liability of a responsible officer under the Internal Revenue Code (sec. 6672) for income taxes or for the employees' share of social security taxes which that officer was responsible for withholding from the wages of employees and paying to the Treasury, although he was not himself the employer. This priority will operate when a person found to be a responsible officer has himself filed in title 11, and the priority will cover the debtor's responsible officer liability regardless of the age of the tax year to which the tax relates. The U.S. Supreme Court has interpreted present law to require the same result as will be reached under this rule. *U.S. v. Sotelo,* 436 U.S. [268, 98 S.Ct. 1795, 56 L.Ed.2d 275] (1978).

This category also includes the liability under section 3505 of the Internal Revenue Code of a taxpayer who loans money for the payment of wages or other compensation.

\* \* \* \* \* \*

Seventh. Excise taxes on transactions for which a return, if required, is last due, under otherwise applicable law or under any extension of time to file the return, within 3 years before the petition was filed, or thereafter. If a return is not required with regard to a particular excise tax, priority is given if the transaction or event itself occurred within 3 years before the date on which the title 11 petition was filed. All Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes.
Cong.Rec., 95th Cong., 2d Sess. (1978) H 11095, 11112–11113 and S 17429–17430.

**9.** Compare footnote 8 *supra* with *Rosenow* rationale reproduced in text *supra.*

**10.** No conference was convened to oversee drafting of what ultimately became the Bankruptcy Code of 1978. (This accounts for the lack of conference report and somewhat confusing legislative history.) The Senate bill was proffered then as a substitute to H.R. 8200.

**11.** The time limit is imposed because the taxing authority should not be given priority for taxes that are unassessed or uncollected through a lack of due diligence.

\* \* \* \* \* \*

The three-year period has been justified on the basis of the time needed by the Internal Revenue Service and State taxing authorities to process and assess income tax claims. The priority is justified theoretically because the government is an involuntary creditor that is unable to gain secured status by assessment and the obtaining of a lien within that time. Because taxing authorities are able to process returns for employment taxes with more facility than returns for

In sum, this Court is convinced that subsections (C) and (E) of section 507(a)(6) should be construed, in terms of the *types of taxes* to which they apply, as articulated by *both* the House and Senate leaders, and consistent with their meaning in the House bill rather than in the Senate bill.

Accordingly, the taxes in question are held to be entitled to section 507(a)(6)(E) priority, to the exclusion of section 507(a)(6)(C) priority. The objection, in each case, is sustained.

### APPENDIX A: SECTION 507(a), Title 11 U.S.C.

| H.R. 8200 | ENACTED PROVISION | S. 2266 |
|---|---|---|
| (6) Sixth, allowed unsecured tax claims, other than claims for fines or penalties not in compensation for actual pecuniary loss, of governmental units, to the extent that such claims are for— | (6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for— | (6) Sixth, allowed unsecured claims, to the extent that such claims are for any— |
| (A) taxes on or measured by income that is taxable before the date of the filing of the petition— | (A) a tax on or measured by income or gross receipts— | (A) tax incurred on or before the date of the filing of the petition, if— |
| (i) for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or | (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition; | (i) a required return or report of any such tax was last due, including extensions, within three years before the date of filing of the petition or thereafter, or |
| (ii) collection or assessment of which was, pending the exhaustion of administrative or judicial remedies, prohibited before three years after the return for such tax was last due, under applicable law or under any extension, and remained so prohibited at any time during the 90 days immediately preceding the date of the filing of the petition; | (ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or | (ii) in the case of a tax for which no return or report is prescribed by law, the tax was incurred within three years before the date of the filing of the petition; |
| | (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case; | |

income taxes, the time period justifying priority status is reduced from three years to two years. H.Rep. No. 95–595, pp. 191–192, 95th Cong., 1st Sess. (1978), U.S.Code Cong. & Admin.News 1978, pp. 6151–6152.

*See also, In re Boyd,* 25 B.R. 1003, 9 B.C.D. 1391, 7 C.B.C.2d 1083 (B.C., S.D.Ohio, W.D. 1982) and *In re Tapp,* 16 B.R. 315, 8 B.C.D. 642, 5 C.B.C.2d 1192 (B.C., D.Alaska 1981), the reasoning of which this Court finds persuasive.

| H.R. 8200 | ENACTED PROVISION | S. 2266 |
|---|---|---|
| **(B)** property taxes assessed before the date of the filing of the petition and last payable without penalty after one year before the date of the filing of the petition; | **(B)** a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition; | **(B)** tax incurred before the date of the filing of the petition— **(i)** if assessed at any time within 240 days immediately before the date of the filing of the petition: Provided, That the assessment was made within 3 years after the return of such taxes was last due, including extensions, or **(ii)** the collection or assessment of which was, pending the exhaustion of administrative or judicial remedies, prohibited at any time during the 300 days immediately before the date of the filing of the petition; **(iii)** for which an offer in compromise was withdrawn by the debtor, or rejected by the governmental unit, during the 240 days immediately before the date of the filing of the petition; |
| **(C)** taxes required to be withheld from wages, salaries, commissions, dividends, interest, or other payments that were paid by the debtor, or by a corporation or partnership that is an insider if the debtor is liable for such taxes, before the date of the filing of the petition, for which a return is last due, under applicable law or under any extension, after two years before the date of the filing of the petition; | **(C)** a tax required to be collected or withheld and for which the debtor is liable in whatever capacity; | **(C)** except as provided in paragraph (3) of this subsection, tax required to be collected or withheld from others and for which the debtor is liable in any capacity; |
| **(D)** employment taxes on wages, salaries, or commissions earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after two years before the date of the filing of the petition; | **(D)** an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; | **(D)** property tax, if the date as of which the tax were required to be assessed was within 3 years before the date of the filing of the petition; |

| H.R. 8200 | ENACTED PROVISION | S. 2266 |
|---|---|---|
| **(E)** excise taxes on— **(i)** a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after one year before the date of the filing of the petition; or | **(E)** an excise tax on— **(i)** a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or | **(E)** taxes for any taxable year attributable to an excessive allowance of a tentative carryback adjustment which the debtor received before the petition was filed, if the taxable year from which the carryback resulted ended on or before the date of the filing of the petition and the return for such year was last due, including extensions, within 3 years before the date of the filing of the petition, or thereafter; |
| **(ii)** if a return is not required, a transaction occurring during the one year immediately preceding the date of the filing of the petition; | **(ii)** if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition; | |
| **(F)** custom duties on a transaction occurring during the one year immediately preceding the date of the filing of the petition; or | **(F)** a customs duty arising out of the importation of merchandise— **(i)** entered for consumption within one year before the date of the filing of the petition; | **(F)** tax for which an offer in compromise was— **(i)** pending at the date of the filing of the petition, or |
| | **(ii)** covered by an entry liquidated or reliquidated within one year before the date of the filing of the petition; or | **(ii)** withdrawn by the debtor, or rejected by the governmental unit, at any time during the 240 days immediately before the date of the filing of the petition, if such tax would have been entitled to priority under other subparagraphs of this paragraph if a case under this title had been commenced on the date on which an offer with respect to such tax was originally submitted; |
| | **(iii)** entered for consumption within four years before the date of the filing of the petition but unliquidated on such date, if the Secretary of the Treasury certifies that failure to liquidate such entry was due to an investigation pending on such date into assessment of antidumping or countervailing duties or fraud, or if information needed for the proper appraisement or classification of such merchandise was not available to the appropriate customs officer before such date; or | |

| H.R. 8200 | ENACTED PROVISION | S. 2266. |
|---|---|---|
| **(G)** taxes not included under the preceding subparagraphs of this paragraph for which an extension of time for payment was granted, to the extent of any payments first due after one year before the date of the filing of the petition, if such taxes would have been included under one of such subparagraphs if a case under this title concerning the debtor had been commenced on the date such extension was granted. | **(G)** a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss. | **(G)** liability of the debtor as transferee from another person who is liable for any tax, if a claim against the transferor for such tax would have been entitled to priority under other subparagraphs of this paragraph if a case under this title had been commenced against the transferor within 1 year before the date of the filing of the petition; |
| **(H)** liability of the debtor as a third party for failing to surrender property or to pay an obligation in response to a levy for taxes of another, or for paying or providing funds for the payment of wages without provision for taxes required to be withheld therefrom, if the event giving rise to such liability occurred within four years before the earlier of— (i) the date of the filing of the petition, or (ii) the commencement of suit against the debtor with respect to such liability, if such suit was pending at the date of the filing of the petition or was terminated not more than one year before such date; | **(I)** amount provided for under an extension or deferral of time for payment of a tax, which had been granted at the request of the debtor before the date of the filing of the petition, if such taxes would have been entitled to priority under other subparagraphs of this paragraph if a case under this title had been commenced on the date on which the extension or deferral with respect to such taxes was originally granted; | **(J)** customs duties arising out of the importation of merchandise— (i) entered for consumption during the 3 years immediately preceding the date of the filing of the petition but unliquidated on such date; (ii) covered by an entry liquidated or reliquidated within 2 years immediately preceding the filing of the petition; or (iii) entered for consumption during the 5 years immediately preceding the date of the filing of the petition but unliquidated on such date, upon certification of the Secretary of the Treasury that such failure to liquidate was due to an existing investigation into possible assessment of antidumping or countervailing duties or fraud. |