792 F.2d 829
 14 Bankr.Ct.Dec. 893, Bankr. L. Rep. P 71,197
 In re Darrel V. SHANK, Debtor.
Darrel V. SHANK, Plaintiff-Appellee,
v.
WASHINGTON STATE DEPARTMENT OF REVENUE, EXCISE TAX DIVISION,
Defendant- Appellant.
 No. 85-4042.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1986.
Decided June 18, 1986.
 
 Kary L. Krismer, Bruce T. Thurston, Woodley & Thurston, Kirkland, Wash., for plaintiff-appellee.
 James R. Tuttle, Asst. Atty. Gen., Olympia, Wash., for defendant-appellant.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, TANG and REINHARDT, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 The Washington Department of Revenue appeals from the judgment of the district court that debtor's sales tax liability is an excise tax for purposes of the Code and is dischargeable in bankruptcy. The narrow issue on appeal is whether liability for a sales tax, required by state law to be collected by sellers from their customers, is governed by the "trust fund" tax or "excise" tax provisions of the Bankruptcy Code. We reverse.
 
 
 2
 The Code provisions in question are section 507(a)(6)(C), which covers a tax "required to be collected," commonly referred to as a "trust fund" tax, and section 507(a)(6)(E), which covers an "excise" tax.[1]
 
 
 3
 A trust fund tax is always given a priority and is never subject to discharge in bankruptcy. 11 U.S.C. Secs. 507(a)(6)(C), 523(a)(1)(A). An excise tax, however, is given a priority and is not subject to discharge if the transaction occasioning the tax occurred less than three years prior to the filing of the bankruptcy petition. 11 U.S.C. Secs. 507(a)(6)(E), 523(a)(1)(A). Consequently, "stale" claims for excise taxes are not entitled to a priority and are dischargeable.
 
 
 4
 Darrel Shank (debtor) operated a retail establishment in the State of Washington. As a retailer, debtor was required by Washington law to collect sales tax on all retail sales and forward the collected funds to the Washington Department of Revenue (Department). RCW 82.08.050 (1981). Debtor failed to forward the collected funds. When the business was discontinued in 1979, debtor's total liability for sales taxes was in excess of $45,000. Debtor soon left the state. After filing for bankruptcy in 1984, debtor instituted an adversary proceeding against the Department seeking a determination that the sales tax debt to the State was dischargeable.
 
 
 5
 The bankruptcy court granted summary judgment in favor of the Department. The bankruptcy court, primarily relying on In re Rosenow, 715 F.2d 277 (7th Cir.1983), concluded that Congress intended collected sales tax to be characterized as a trust fund tax and was thus excepted from discharge under 11 U.S.C. Secs. 507(a)(6)(C) and 523(a)(1)(A).
 
 
 6
 The district court reversed the judgment of the bankruptcy court. The district court examined the joint explanatory statement by the House and Senate floor managers of Sec. 507 and concluded that all sales taxes owed by the sellers, including those collected by sellers and held in trust, were intended by Congress to be characterized as excise taxes and dischargeable under Sec. 507(a)(6)(E). The Department timely appeals.
 
 DISCUSSION
 
 7
 The district court's conclusions of law are reviewed de novo. In re Global Western Development Corp., 759 F.2d 724 (9th Cir.1985). Because the material facts are uncontested, the only issue is how to construe the applicable provisions of the Bankruptcy Code.
 
 
 8
 In its 1966 amendment to the Bankruptcy Act, Congress placed a time limitation on the non-dischargeability of tax debts. Most tax debts more than three years old became dischargeable. Act of July 5, 1966, Pub.L. No. 89-496 Sec. 2, 80 Stat. 270. However, a proviso added by the 1966 Amendment identified certain tax debts that remained non-dischargeable even though the tax debt was more than three years old. One such debt was a trust-fund tax. Act, Sec. 17(a)(1)(e).
 
 
 9
 Section 17(a)(1)(e) excepted from discharge taxes the debtor "has collected or withheld from others." Although this language did not expressly refer to sales taxes, the legislative history strongly suggests that Congress did not intend to limit the Sec. 17(a)(1)(e) exception to withholding taxes. DeChiaro v. New York State Tax Comm'n, 760 F.2d 432, 434 (2d Cir.1985). The indication was, in fact, that the 17(a)(1)(e) exception was intended to extend to sales taxes a vendor has collected from his customers. Id. Courts construing 17(a)(1)(e) applied it to a sales tax that sellers were obligated to collect from buyers. See, e.g., In re Fox, 609 F.2d 178, 181 (5th Cir.), cert. denied, 449 U.S. 821, 101 S.Ct. 78, 66 L.Ed.2d 23 (1980).
 
 
 10
 With the 1966 amendments to the Act in mind, we turn to the legislative history of the 1978 enactments of sections in issue.
 
 
 11
 The House and Senate versions of Sec. 507 were markedly different. See In re Monaco, 47 B.R. 602, 610-13 (Bankr.W.D.N.Y.1985), reversed, Kelly v. New York State Dep't of Tax., 61 B.R. 674 (W.D.N.Y. 1985) (remanded to conform with DeChiaro ). Section 507 resulted from a compromise between the floor leaders of the bill: Congressman Edwards and Senator DeConcini. Id. at 608. The House version of subsection (C) encompassed only "taxes to be withheld from wages, salaries, commissions, dividends, interest, or other payments that were paid by the debtor ..." Monaco, 47 B.R. at 611; see also H.R. No. 595, 95 Cong., 1st Sess. 357-58 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, reprinted in A. Herzog & L. King, Collier Pamphlet Edition, Bankruptcy Code, Sec. 507 at 240 (1985).
 
 
 12
 The Senate's version of subsection (C) was virtually identical to the enacted provision. It included "tax required to be collected or withheld from others and for which the debtor is liable in any capacity ..." Monaco, 47 B.R. at 611. The Senate Report stated:
 
 
 13
 This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, the employees' shares of social security and railroad retirement taxes, and also Federal Unemployment Insurance. This category also includes excise taxes which a seller of goods or services is required to collect from a buyer and pay over to a taxing authority.
 
 
 14
 S.Rep. No. 989, 95th Cong., 2d Sess. 68-73 (1978), U.S.Code Cong. & Admin.News 1978, p. 5857, reprinted in, A. Herzog & L. King, supra, Sec. 507 at 243 (emphasis added).
 
 
 15
 The compromise enacted of Sec. 507 adopted the Senate's version of subsection (C). It was accompanied by the Joint Statement of Edwards and DeConcini:
 
 
 16
 Taxes which the debtor was required by law to withhold or collect from others and for which he is liable in any capacity, regardless of the age of the tax claims. This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes.
 
 
 17
 124 Cong.Rec. 32,416 (1978), reprinted in A. Herzog & L. King, supra, Sec. 507 at 248-49. We recognize that the reference to collected excise taxes in the Senate Report was, intentionally or unintentionally, deleted from the Joint Statement.
 
 
 18
 The House version of subsection (E) was essentially the same as the enacted version, with one difference: excise tax debts were dischargeable if older than one year, instead of three years. The House Report does not elaborate on what the term "excise tax" would encompass. H.Rep. No. 595, 95th Cong., 1st Sess. 357-58 (1977), reprinted in A. Herzog & L. King, supra, Sec. 507 at 240.
 
 
 19
 The joint statement of Edwards and DeConcini defines excise taxes as including the following:
 
 
 20
 All Federal, State or local taxes generally considered by this category, including sales tax, estate and gift tax, gasoline and special fuel taxes, and wagering and truck taxes.
 
 
 21
 124 Cong.Rec. 32,416 (1978), reprinted in A. Herzog & L. King, supra, Sec. 507 at 250.
 
 
 22
 As the DeChiaro court recognized, the statutory language creates an overlap between the provisions for trust fund and excise taxes:
 
 
 23
 Congress may have intended to differentiate between two categories of excise taxes: those not collected from third parties, which are dischargeable if stale, and those collected from third parties, which are not dischargeable. Alternatively, Congress may have intended to differentiate between two categories of trust fund taxes: those that are also sales taxes and hence dischargeable if stale, and all other taxes collected from third parties, which are not dischargeable.
 
 
 24
 760 F.2d at 435.
 
 
 25
 We believe that Congress intended to retain the distinction between the two forms of sales tax liability: those owed personally by a retailer and those incurred by a retailer's customers which are collected by the retailer under the authority of the state, held in trust, and then remitted by the retailer to the state. We find no indication that Congress intended to treat retailers differently than employers, who clearly cannot discharge their liability for withheld income taxes. Rosenow, 715 F.2d at 280.
 
 
 26
 This interpretation is supported by important public policy considerations. A failing retailer should not be given incentive to default on sales tax obligations. If the obligation to the taxing authority can be discharged by a bankruptcy filing three years after the transaction giving rise to the tax, such an incentive to default will exist. For these reasons, we hold that Congress intended to differentiate between two categories of excise taxes and that the trust fund tax provision excepts from discharge those excise taxes required to be collected from third parties. DeChiaro, 760 F.2d at 435; Rosenow, 715 F.2d at 280; Contra In re Boyd, 25 B.R. 1003 (Bankr.S.D.Ohio 1982); In re Tapp, 16 B.R. 315 (Bankr.D.Alaska 1981).
 
 
 27
 The dissent places emphasis on the fact that the Senate Report of Sec. 507(a)(6)(C) specifically mentioned excise taxes collected by retailers from third parties, but that the Joint Statement that accompanies the compromise subsection did not contain similar language. Since the Senate's version of subsection (C) was adopted, the dissent infers that Congress intended to characterize third-party-collected sales taxes as excise taxes rather than as trust fund taxes.
 
 
 28
 This theory is plausible, but strained. We do not believe that without more the intentional or unintentional deletion in the Joint Statement of the Senate Report's reference to collected excise taxes signals Congress' intent to perform what would be a significant about-face in its treatment of sales taxes collected from third parties.
 
 
 29
 In view of the entire history of the trust fund tax provision, we hold that a debt for a "trust fund sales tax" is not released by a bankruptcy discharge.
 
 The judgment of the district court is
 
 30
 REVERSED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 31
 I dissent from the majority's conclusion that a merchant's liability for Washington State sales tax is a nondischargeable debt under 11 U.S.C. Sec. 507(a)(6)(C).[1]
 
 
 32
 Under section 507(a)(6)(C) liabilities for taxes "required to be collected or withheld and for which the debtor is liable in whatever capacity" are not dischargeable. On the other hand, under section 507(a)(6)(E), liabilities for "excise tax[es]" are dischargeable if the transaction giving rise to the tax occurred more than three years prior to the commencement of the bankruptcy case. The parties agree that the tax liabilities in this case are more than three years old and are thus dischargeable if the Washington State sales tax is an "excise tax", but are not dischargeable if the tax is one "required to be collected or withheld."
 
 
 33
 The majority, in reaching its conclusion, first determines that the words of the statute do not provide a means for determining whether the sales tax at issue is an "excise tax" or a tax "required to be collected." The majority then goes on to examine the law under the Bankruptcy Act of 1898 (the predecessor to the Bankruptcy Code of 1978), the legislative history of the Senate version of the Bankruptcy Code, and the decisions of the Second and Seventh Circuits, before reaching its holding that sales tax is a tax "required to be collected."
 
 
 34
 I agree with the majority that the words of section 507(a)(6) are unclear. Under such circumstances, a court must turn to the legislative history of the statute for guidance. The legislative history of the Bankruptcy Code is complicated. On February 1, 1978, the House of Representatives passed H.R. 8200, the House version of the Bankruptcy Code. 124 Cong.Rec. 1804 (1978). In H.R. 8200, section 507(a)(6)(C) provided that "taxes required to be withheld from wages, salaries, commissions, dividends, interest, or other payments that were paid by the debtor" were dischargeable if the transaction giving rise to the tax occurred at least two years prior to bankruptcy. See 123 Cong.Rec. 35653 (1977). Section 507(a)(6)(E) provided that "excise tax[es]" were dischargeable after one year. Id.
 
 
 35
 On September 7, 1978, the Senate passed its version of the Bankruptcy Code. 124 Cong.Rec. 28284 (1978). Section 507(a)(6)(C) provided that "tax[es] required to be collected or withheld" were not dischargeable. See S. 2266, 95th Cong., 2d Sess. (1978); 124 Cong.Rec. 28284 (1978). Excise taxes were not mentioned in the Senate version of section 507(a)(6).
 
 
 36
 There were substantial differences between the House and Senate versions of the Code, some of them so significant that it was decided not to have a conference committee consider the matter. Klee, Legislative History of the New Bankruptcy Law, 28 De Paul L.Rev. 941, 953-54 (1979). Instead, the floor managers of the proposed Code, Senator DeConcini and Representative Edwards, with the assistance of some other members, negotiated an amendment which was then introduced in both houses. Id. at 954-55. This joint amendment was passed by both houses, and the Bankruptcy Code became law. Id. at 955-57.[2]
 
 
 37
 Section 507 was one of the sections covered by the joint amendment. The only legislative history concerning the amendment is found in the Joint Statement of Senator DeConcini and Representative Edwards. See 124 Cong.Rec. 33989 (1978) (Senate), reprinted in 1978 U.S.Code Cong. & Ad.News 6505; 124 Cong.Rec. 32350 (1978) (House), reprinted in 1978 U.S.Code Cong. & Ad.News 6436. The Joint Statement was presented to both houses prior to the vote as the explanation of the negotiators, including the floor managers, as to the compromise that they reached. The majority errs by failing to rely on this critical legislative history. Instead, it focuses on the report which accompanied S. 2266, the Senate version of the Bankruptcy Code that conflicted with the House version. The Senate report obviously preceded the negotiations that produced the joint amendment. The majority relies on the earlier Senate report because the language of section 507(a)(6)(C) as enacted is nearly identical to the language found in S. 2266. Senator DeConcini and Representative Edwards, however, viewed the entirety of section 507(a)(6) in its final form as a compromise between the House and Senate versions. 124 Cong.Rec. 33997 (Senate), reprinted in 1978 U.S.Code Cong. & Ad.News 6505, 6520, 124 Cong.Rec. 32398 (House), reprinted in 1978 U.S.Code Cong. & Ad.News 6436, 6451. Of particular importance is section 507(a)(6)(E) which expressly makes excise taxes dischargeable and which was included as a part of the joint amendment although no comparable provision had been contained in S. 2266. The majority, by relying only on the legislative history prior to the joint amendment, fails to give effect to the compromise reached by the floor managers of the Code. To avoid such an error, section 507(a)(6)(C) as enacted must be construed with reference to, and in light of, section 507(a)(6)(E) as enacted. Differences between the explanation of section 507(a)(6) in the Senate report prior to the joint amendment and the explanation of the section after the compromise in the Joint Statement are far from the irrelevancies the majority believes them to be.
 
 
 38
 The Joint Statement--the legislative history of section 507(a)(6) as enacted--makes it quite clear that a sales tax is an "excise tax" and not a "tax required to be collected or withheld." Senator DeConcini and Representative Edwards stated that the category of taxes required to be collected or withheld "covers the so-called 'trust fund' taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes." 124 Cong.Rec. 34015 (Senate), reprinted in 1978 U.S.Code Cong. & Ad.News 6506, 6566; 124 Cong.Rec. 32415 (House), reprinted in 1978 U.S.Code Cong. & Ad.News 6436, 6497. With respect to excise taxes, the Joint Statement said that "[a]ll Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes." 124 Cong.Rec. 34016 (Senate), reprinted in 1978 U.S.Code Cong. & Ad.News 6505, 6567; 124 Cong.Rec. 32416 (House), reprinted in 1978 U.S.Code Cong. & Ad.News 6436, 6498 (emphasis added).
 
 
 39
 Thus, the Joint Statement leaves little room for doubt that a sales tax is an "excise tax" under section 507(a)(6)(E), and not, as the majority concludes, a "tax required to be collected or withheld" under section 507(a)(6)(C). The Joint Statement is the legislative history of the Bankruptcy Code as enacted. Given this clarity, I would give effect to the expressed Congressional intent and hold that because Shank's liability is a sales tax liability over three years old, it is dischargeable under section 507(a)(6)(E).
 
 
 40
 The decision by the floor managers to adopt the House version of section 507(a)(6) insofar as it made excise taxes, including sales taxes, dischargeable (but extending the period from one to three years), and to incorporate that agreement in subsection E, explains why, when they also decided to use the Senate language regarding "taxes required to be collected" in subsection C, it was necessary to delete a sentence from the original Senate explanation of the purpose and effect of subsection (C). The Senate report supporting its version of section 507(a)(6)(C) stated that:
 
 
 41
 This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' shares of social security and railroad retirement taxes, and also Federal Unemployment Insurance. This category also includes excise taxes which a seller of goods and services is required to collect from a buyer and pay over to a taxing authority.
 
 
 42
 S.Rep. No. 989, 95th Cong, 2nd Sess. 71 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5857 (emphasis added). The floor managers, after they reached their compromise, retained nearly identical language in their explanation of subsection (C) except that they omitted the sentence emphasized above that states that the subsection "also includes excise taxes." It is apparent that their reason for doing so was the agreement to make excise taxes (including sales taxes) dischargeable, as evidenced by the inclusion in section 507 of subsection (E) which deals expressly with excise taxes and provides for their dischargeability and the Joint Statement's definition of excise taxes as "including sales taxes."
 
 
 43
 Even if I found it necessary to consider the law under the Bankruptcy Act of 1898, or the decisions of the Second and Seventh Circuits, my conclusion would not change.
 
 
 44
 Under the 1898 Act, the dischargeability of taxes was regulated by section 17(a)(1), which was vastly different in both form and substance from the current section 507(a)(6).[3] Despite these differences, the majority believes that section 507(a)(6) must be given the same interpretation as section 17(a)(1) has been given, arguing that Congress did not explicitly indicate an intent to change the law in this area. There are two problems with the majority's position. First, when Congress completely rewrites the law in a particular field, as it did in enacting the Bankruptcy Code of 1978, it should not be required to specify explicitly each instance in which it is changing prior law; such would be too great a burden.
 
 
 45
 Second, the cases interpreting section 17(a)(1) on which the majority relies were all decided after the enactment of the 1978 Code, and thus Congress was entirely unaware of them when it revised the bankruptcy law. Apparently only two courts have held that a sales tax was a tax "collected or withheld" under section 17(a)(1)(e). See In re Fox, 609 F.2d 178 (5th Cir.), cert. denied, 449 U.S. 821, 101 S.Ct. 78, 66 L.Ed.2d 23 (1980); Lawrence v. Lindley, 65 Ohio St.2d 105, 418 N.E.2d 1351 (1981) (relying on Fox ). Prior to Fox and at the time the 1978 Code was enacted, the commentators appeared to believe that the phrase "taxes.... collected or withheld" as used in section 17(a)(1)(e) referred to "income and social security withholdings." 1A Collier on Bankruptcy p 17.14 (14th ed. 1978). Thus, it is quite likely that when Congress drafted section 507(a)(6) it thought that section 17(a)(1)(e) did not refer to sales taxes.[4] However, given the degree of uncertainty that exists, I do not believe section 17(a)(1) can provide much guidance either way as to the meaning of section 507(a)(6).
 
 
 46
 Two circuits have reached the same conclusion the majority reaches here. See In re Rosenow, 715 F.2d 277 (7th Cir.1983); DeChiaro v. New York State Tax Commission, 760 F.2d 432 (2d Cir.1985). These cases, however, are not persuasive. The court in Rosenow incorrectly believed that the Joint Statement reflected the view of the House of Representatives only, rather than the views of both the House and Senate, and accordingly refused to rely on it. 715 F.2d at 280. Such an error makes the holding highly questionable, and of little utility here. In DeChiaro, the court also appeared to have misunderstood the nature of the Joint Statement and the compromise it represented, referring to it as mere "floor debate". 760 F.2d at 436. The court, without adequate or convincing explanation, decided to rely instead on past interpretations of section 17(a)(1) and the legislative history of the Senate's version of the Bankruptcy Code. Its conclusion, therefore, constitutes somewhat of a non sequitur, and is hardly convincing.
 
 
 47
 The majority finally attempts to buttress its conclusion with arguments concerning the undesirability of allowing sales tax liabilities to be dischargeable. The wisdom of the policy decisions incorporated in section 507(a)(6) is a matter for Congress, not the courts, and Congress is free to amend the statute at any time. Furthermore, the policy arguments concerning the dischargeability of tax liabilities are far more complex than the majority appears to think. While dischargeability may encourage taxpayers to default, nondischargeability may encourage taxing authorities to be overly lax in their collection activities and may cause harm to other creditors of the debtor. See, e.g., H.R.Rep. No. 372, 88th Cong., 1st Sess. 3-4 (1963); S.Rep. No. 114, 89th Cong., 1st Sess. 4-5 (1965); H.R.Rep. No. 687, 8th Cong., 1st Sess. 3-4 (1965); S.Rep. No. 1158, 89th Cong. 2d Sess. 4 (1966), reprinted in 1966 U.S.Code Cong. & Ad.News 2468, 2471. We must assume that Congress has carefully balanced these conflicting policies, and we should respect its decision.
 
 
 48
 Because the legislative history of section 507(a)(6) as enacted--the Joint Statement--makes it clear that a sales tax is an excise tax under section 507(a)(6)(E), I would hold that Shank's debt to the State of Washington is dischargeable. Accordingly, I respectfully dissent.
 
 
 
 [1]
 Sections 507(a)(6)(C) and 507(a)(6)(E) provide:
 (a) The following expenses and claims have priority in the following order:
 * * *
 (6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for--
 * * *
 (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
 * * *
 (E) an excise tax on--
 (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
 (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition....
 11 U.S.C. Sec. 507(a)(6)(C)(E).
 The recent amendment to the Code adding a new priority caused Section 507(a)(6) to be renumbered 507(a)(7). Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, Sec. 350(2), 98 Stat. 333, 358. Since the original version governs resolution of this case, this opinion refers to Sec. 507(a)(6) as it was in effect prior to the 1984 amendment.
 
 
 [1]
 Section 523(a) actually deals with dischargeability. However, Sec. 523(a)(1)(A) by its own terms requires us to refer to Sec. 507(a)(6) to determine whether, and on what terms, specific tax liabilities are dischargeable
 Unless otherwise indicated, all references are to the Bankruptcy Code of 1978 prior to its amendment by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333.
 
 
 [2]
 In addition to passing the joint amendment, the Senate on October 5, 1978, passed a series of amendments regarding technical corrections, rolling stock equipment, and the status and appointment of bankruptcy judges. See 124 Cong.Rec. 33990-91, 34019. The House, by unanimous consent, concurred in these amendments on October 6. See 124 Cong.Rec. 34144-45. See generally Klee, supra, at 955-56. None of the Senate amendments is relevant here
 
 
 [3]
 Section 17(a)(1) provided:
 A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy: Provided, however, that a discharge in bankruptcy shall not release a bankrupt from any taxes (a) which were not assessed in any case in which the bankrupt failed to make a return required by law, (b) which were assessed within one year preceding bankruptcy in any case in which the bankrupt failed to make a return required by law, (c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, (d) with respect to which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat, or (e) which the bankrupt has collected or withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over; but a discharge shall not be a bar to any remedies available under applicable law to the United States or to any State or any subdivision thereof, against the exemption of the bankrupt allowed by law and duly set apart to him under this Act; And provided further, That a discharge in bankruptcy shall not release or affect any tax lien.
 
 
 [4]
 But cf. DeChiaro v. New York State Tax Commission, 760 F.2d 432, 434 (2d Cir.1985) (suggesting in dicta that it was always understood that Sec. 17(a)(1)(e) referred to all excise taxes collected from others)