**In re Robert H. ST. HILAIRE, Debtor.**

**Bankruptcy No. 87–11578–HAL.**

United States Bankruptcy Court,
D. Massachusetts.

June 30, 1989.

George R. Desmond, Framingham, Mass., for debtor.

Richard T. King, Mass. Dept. of Revenue Legal Bureau, Cambridge, Mass., for Taxing Authorities.

## MEMORANDUM

### I. INTRODUCTION

JAMES N. GABRIEL, Chief Judge.

The Debtor, Robert H. St. Hilaire (the "Debtor") operates a diner in Marlboro, Massachusetts. On October 14, 1987, he filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On January 27, 1988, the Commonwealth of Massachusetts Department of Revenue (the "Commonwealth" or the "DOR") filed proofs of claim totalling $70,397.36 for meals taxes incurred between July 1976 and October 14, 1987, plus statutory interest and penalties. The Debtor objected to the proofs of claim filed by the DOR.

The Debtor, on the one hand, claims that all the taxes assessed by the Commonwealth, except for $168.65, are not entitled to priority because they were assessed more than three years before the date of the filing of his bankruptcy petition. Specifically, the Debtor asserts that the taxes are measured by gross receipts under § 507(a)(7)(A) or are excise taxes under § 507(a)(7)(E) of the Bankruptcy Code, although in his brief the Debtor seems to abandon the argument that the Massachusetts meals tax is a gross receipts tax. The DOR, on the other hand, maintains that the priority status of taxes in question is governed by § 507(a)(7)(C), and, accordingly, the timing of the assessments is immaterial.

### II. STATUTORY FRAMEWORK

A. Bankruptcy Code provisions.

Section 1322 of the Bankruptcy Code provides that a Chapter 13 plan shall *inter alia* "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." 11 U.S.C. § 1322(a)(2). Section 507 provides in relevant part:

(a) The following expenses and claims have priority in the following order: ...

(7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the

petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or agreement, after, the commencement of the case; ...

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity; ...

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition; ...

11 U.S.C. § 507(a)(7). Finally, section 523(a) provides that a discharge under section 1328(b) does not discharge an individual debtor from any debts "for a tax ... of the kind specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed." 11 U.S.C. § 523(a)(1)(A).

The sole issue in the case is whether the Massachusetts meals tax is a tax on gross receipts, a tax required to be collected or withheld or an excise tax. If the taxes in question are covered by section 507(a)(7)(C),

for which there is no proscribed limitation period, they are not dischargeable and are entitled to priority; if they are covered by either section 507(a)(7)(A) or (E), they are not entitled to priority, having been assessed more than three years since the date of the filing, and they are dischargeable, except to the extent of $168.65.

B. State law provisions.

Section 2 of M.G.L. c. 64H imposes a tax on retail sales of tangible personal property. It provides:

An excise tax is hereby imposed upon sales at retail of tangible personal property in the commonwealth by any vendor at the rate of five per cent of the gross receipts of the vendor from all such sales of such property, except as otherwise provided in this chapter. The excise shall be paid by the vendor to the commissioner at the time provided for filing the return required by section sixteen of chapter sixty-two C.[1]

Mass.Gen.Laws Ann. ch. 64H, § 2 (West 1988 & supp.1989).

Section 3(a) further provides:

(a) Except as provided in paragraphs (b) and (c) of this section, reimbursement for the tax hereby imposed shall be paid by the purchaser to the vendor, and each vendor in the commonwealth shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed by this chapter, or an amount equal as nearly as possible or practicable to the average equivalent thereof; and such tax shall be a debt from the purchaser to the vendor, when so added to the sales price, and shall be recoverable at law in the same manner as other debts.

---

1. The applicable statute in effect prior to January 1, 1978 was M.G.L. c. 64B, § 2. It provided: There is hereby levied and there shall be collected and paid a tax equivalent to five per cent of the amount charged for all meals, including cover and other charges, if any, for which the purchaser is charged as a total one dollar or more, wherever furnished in the commonwealth. The state tax commission shall prescribe the method of determining the portion of an entire charge which is applicable to meals in the event that such entire charge is in part for meals and in part for lodging or any other item or service. The excise shall be paid by the taxpayer to the commissioner at the time and in the manner hereinafter provided. Mass.Gen.Laws Ann. ch. 64B, § 2 (repealed 1977).

Mass.Gen.Laws Ann. ch. 64H, § 3(a) (West 1988 & Supp. 1989).

Although the Debtor emphasizes the fact that Massachusetts statutes in effect during the tax periods in question are denominated excise taxes and that section 2 of ch. 64H refers to gross receipts, the Commonwealth urges the Court to look to the substance of the Massachusetts sales tax instead. In the first instance, the Commonwealth highlights the fact that the sales tax is not a "pure" gross receipts tax since it is imposed upon transactions which involve the transfer of possession of tangible personal property for a consideration. Since the theoretical result of this may be a tax equal to a fraction of a cent, the Commonwealth points out that a statutory formula is used to determine how much tax is to be collected on each sale. *See* Mass. Gen.Laws Ann. ch. 64H, §§ 4, 5 (West 1988 & Supp.1989). According to the Commonwealth, if the sales tax were a "pure" gross receipts tax, there would be no need for a formula and no "breakage" (the difference between the amount of tax due and the amount of tax actually collected).

The Commonwealth also emphasizes the difference between the sales tax in question and pure excise taxes, such as the corporate excise tax or the motor vehicle tax. These taxes are imposed upon rights or privileges and are owed personally rather than being collected from others.

Finally, the Commonwealth notes that, like withholding taxes, personal liability is imposed upon persons who have a duty to payover sales taxes collected from others. Specifically, section 16 of c. 64H provides:

> Every person who fails to pay to the commissioner any sums required by this chapter shall be personally and individually liable therefor to the commonwealth. The term "person", as used in this section, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to pay over the taxes imposed by this chapter.

Mass.Gen.Laws Ann. ch. 64H, § 16 (West 1988 & Supp.1989).

## III. LEGISLATIVE HISTORY

The case turns on the statutory construction of section 507(a)(7) of the Bankruptcy Code. The search for the meaning of the statute begins with the actual language, but the structure and legislative history of the statute provide significant guidance in fathoming congressional intent. The Supreme Court has provided instruction with respect to the appropriate sources for legislative history:

> In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.' *Zuber v. Allen*, 396 U.S. 168, 186 [90 S.Ct. 314, 324, 24 L.Ed.2d 345] (1969). We have eschewed reliance on the passing comments of one Member, *Weinberger v. Rossi*, 456 U.S. 25, 35 [102 S.Ct. 1510, 1517, 71 L.Ed.2d 715] (1982), and casual statements from the floor debates. *United States v. O'Brien*, 391 U.S. 367, 385 [88 S.Ct. 1673, 1683, 20 L.Ed.2d 672] (1968); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 [100 S.Ct. 2051, 2056, 64 L.Ed.2d 766] (1980). In *O'Brien, supra*, [391 U.S.] at 385, [88 S.Ct. at 1683] we stated that Committee Reports are 'more authoritative' than comments from the floor, and we expressed a similar preference in *Zuber, supra*, [396 U.S.] at 187 [90 S.Ct. at 325].

*Garcia v. United States*, 469 U.S., 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984) (footnote omitted).

The wording of section 502(a)(7) is unclear because sales tax liabilities may be owed personally be a purchaser or they may be owed by a retailer to the state, although incurred by the retailer's customers with the retailer being obligated to collect the taxes under the authority of the state. As the court in *DeChiaro v. New York State Tax Commission*, 760 F.2d 432 (2d Cir.1985), stated:

The statutory language plainly creates an overlap between the provisions for trust fund and excise taxes. Obviously the overlap must be resolved since the two provisions lead to conflicting consequences. There are two possibilities. Congress may have intended to differentiate between two categories of excise taxes: those not collected from third parties, which are dischargeable if stale, and those collected from third parties, which are not dischargeable. Alternatively, Congress may have intended to differentiate between two categories of trust fund taxes: those that are also sales taxes and hence dischargeable if stale, and all other taxes collected from third parties, which are not dischargeable.

*Id.* at 435 (footnotes omitted).

The legislative history of section 507 is complicated. *See generally* Klee, "Legislative History of the New Bankruptcy Code," 54 Am.Bankr.L.J. 275 (1980). On February 1, 1978, the House of Representatives passed its version of the Bankruptcy Code. H.R. 8200, 95th Cong., 1st Sess. (1977). With respect to "trust fund taxes" section 507(a)(6)(C) of H.R. 8200 provided that "taxes required to be withheld from wages, salaries, commissions, dividends, interest or other payments that were paid by the debtor" were dischargeable if the taxable transaction occurred at least two years prior to the filing of the bankruptcy petition. Section 507(a)(6)(E) of the House bill provided that excise taxes were dischargeable after one year. *See* H.R. 8200, 95th Cong., 1st Sess. (1977) *reprinted in Collier on Bankruptcy*, 15th ed., App. 3, Part III.

After the House passed H.R. 8200, it was sent to the Senate for consideration. However the Senate Judiciary Committee decided to take action on its own bill, S.2266. The Senate Judiciary Committee favorable reported S.2266 with amendments on July 14, 1978. Following the Senate Judiciary Committee's action, the bill was referred to the Senate Finance Committee. That committee considered the bill and reported it favorably with amendments. On September 7, 1978 all of the amendments proposed by the Finance Committee to the Judiciary Committee-reported bill were adopted by the Senate. Klee, *supra*, at 287–88.

Section 507(a)(6)(C) of the Senate bill provided that taxes "required to be collected or withheld from others and for which the debtor is liable in any capacity" were not dischargeable. Excise taxes were not mentioned in the Senate version. The Judiciary and Finance Committee Reports contain virtually identical language with respect to trust fund taxes. *Compare* S.Rep. No. 95–989, 95th Cong., 2d Sess. 71 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5857 *with* S.Rep. No. 95–1106, 95th Cong., 2d Sess 16 (1978). The Finance Committee Report provides:

Taxes (not covered by the third priority) which the debtor was required by law to withhold or collect form others and for which he is liable in any capacity, regardless of the age of the tax claims (sec. 507(a)(6)(D)). This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security and Federal unemployment insurance. *This category also includes excise taxes which a seller of goods or services is required to collect from a buyer and payover to a taxing authority* ....

S.Rep. No. 1106, 95th Cong., 2d Sess. 16 (1978) (emphasis supplied).

There were substantial differences between the House and Senate versions of the Code. The floor managers of the proposed Code, Senator DeConcini and Representative Edwards, with the assistance of other members, negotiated an amendment which was introduced in both houses, rather than having a conference committee consider the matter. Klee, *supra*, at 289–90. The compromise bill that was fashioned was adopted by the House on September 28, 1978 as an amendment in the nature of a substitute to the senate amendment to House bill H.R. 8200. *Id.* According to *Collier*, the floor managers agreed upon a joint explanatory statement which each published in the Congressional Record immediately following the floor debates and

which explained in detail the compromises that were reached and the interpretations of the new language. *Collier on Bankruptcy*, 15th ed., App. 3, Part IX–1. Again, according to *Collier*, the joint explanatory statement "is similar in function and purpose to the Joint Explanatory Statement of Managers that accompanies a formal Conference Report of a Committee of Conference, and its effect should be the same." *Id.*

Both Congressman Edwards and Senator DeConcini made the following statement:

> Section 507(a)(6) of the House amendment represents a compromise between similar provisions contained in H.R. 8200 as passed by the House and the Senate amendment.

> \*　　\*　　\*　　\*　　\*　　\*

> Fifth. Taxes which the debtor was required by law to withhold or collect from others and for which he is liable in any capacity, regardless of the age of the tax claims. This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes.

> In addition, this category includes the liability of a responsible officer under the Internal Revenue Code (sec. 6672) for income taxes or for the employees' share of social security taxes which that officer was responsible for withholding from the wages of employees and paying to the Treasury, although he was not himself the employer. This priority will operate when a person found to be a responsible officer has himself filed in title 11, and the priority will cover the debtor's responsible officer liability regardless of the age of the tax year to which the tax relates. The U.S. Supreme Court has interpreted present law to require the same result as will be reached under this rule. *U.S. v. Sotelo*, 436 U.S. [268, 98 S.Ct. 1795, 56 L.Ed.2d 275] (1978).

> This category also includes the liability under section 3505 of the Internal Revenue Code of a taxpayer who loans money for the payment of wages or other compensation.

> \*　　\*　　\*　　\*　　\*　　\*

> Seventh. Excise taxes on transactions for which a return, if required, is last due, under otherwise applicable law or under any extension of time to file the return, within 3 years before the petition was filed, or thereafter. If a return is not required with regard to a particular excise tax, priority is given if the transaction or event itself occurred within 3 years before the date on which the title 11 petition was filed. *All federal, state or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes.*

124 Cong.Rec. H 11095, 11112–13 (daily ed. Sept. 28, 1978) (remarks of Rep. Don Edwards); 124 Cong.Rec. S 17429–30 (daily ed. Oct. 6, 1978) (remarks of Sen. Deconcini) (emphasis supplied).

## IV. CASE LAW

Three circuit courts have concluded that sales taxes which are required by state law to be collected by a seller from his customers are governed by section 507(a)(7)(C) of the Bankruptcy Code. *In re Shank,* 792 F.2d 829 (9th Cir.1986); *DeChiaro v. New York State Tax Commission,* 760 F.2d 432 (2d Cir.1985); *In re Rosenow,* 715 F.2d 277 (7th Cir.1983). The Court in *In re Shank, supra,* stated:

> We believe that Congress intended to retain the distinction between the two forms of sales tax liability: those owed personally by a retailer and those incurred by a retailer's customers which are collected by the retailer under the authority of the state. We find no indication that Congress intended to treat retailers differently than employers, who clearly cannot discharge their liability for withheld income taxes.

> \*　　\*　　\*　　\*　　\*　　\*

The dissent places emphasis on the fact that the Senate Report of § 507(a)(6)(C) specifically mentioned ex-

cise taxes collected by retailer from third parties, but that the Joint Statement that accompanies the compromise subsection did not contain similar language. Since the Senate's version of subsection (C) was adopted, the dissent infers that Congress intended to characterize third-party-collected sales taxes as excise taxes rather than as trust fund taxes.

This theory is plausible, but strained. We do not believe that without more the intentional or unintentional deletion in the Joint Statement of the Senate Report's reference to collected excise taxes signals Congress' intent to perform what would be a significant about-face in it treatment of sales taxes collected from third parties.

792 F.2d at 832–33.

The court in *DeChiaro, supra,* also was persuaded that Congress intended to differentiate between two categories of excise taxes. It noted that it could find "nothing to indicate that Congress intended to change prior law concerning sales taxes collected from others." 760 F.2d at 435. Moreover, the court was not impressed by the remarks of Senator DeConcini and Representative Edwards. It stated:

> Admittedly, some remarks made in floor debate on the compromise lend support to the debtors' position: "All Federal, State or local taxes generally considered or expressly treated as excises ..., including sales taxes ..." are dischargeable under the excise provision. 124 Cong.Rec. 34016 (1978) (remarks of Senator DeConcini, Senate Subcommittee Chairman), *reprinted in* 1978 U.S. Code Cong. & Ad.News 6505, 6567; 124 Cong. Rec. 32416 (1978) (remarks of Representative Edwards, House subcommittee chairman), *reprinted in* 1978 U.S. Code Cong. & Ad.News 6436, 6498. In view of the entire history of the trust fund tax provision, however, we do not believe that these remarks provide a sufficient basis for holding that the excise tax provision was intended to carve out an exception to the trust fund tax provision.

*Id.* at 436.

In *Rosenow, supra,* the Court of Appeals for the Seventh Circuit, *citing In re Fox,* 609 F.2d 178 (5th Cir.), *cert. denied,* 449 U.S. 821, 101 S.Ct. 78, 66 L.Ed.2d 23 (1980), relied upon prior judicial interpretations of section 17a(1) of the Bankruptcy Act, 11 U.S.C. § 35(a)(1), as well as the two Senate Committee reports. The Court of Appeals for the Fifth Circuit in *Fox,* for example, held that section 17a(1)e, which provided that taxes "which the bankrupt has collected or withheld from others as required by the laws of the United States or any state or political subdivision thereof, but has not paid over" were not dischargeable, did not apply only to social security taxes, income taxes, and unemployment insurance taxes. *Id.* at 181. *See also Lawrence v. Lindley,* 65 Ohio St.2d 105, 418 N.E.2d 1351 (1981). The court in *Rosenow* criticized the court in *In re Tapp,* 16 B.R. 315 (Bankr.D.Alaska 1981), for relying too heavily on Representative Edwards' comments while ignoring the Senate reports and prior judicial interpretations. 715 F.2d at 280.

Despite the prevailing view represented in *Shank, DeChiaro* and *Rosenow,* a dissenting opinion in *Shank* is thought provoking. In his dissenting opinion, Judge Reinhardt criticizes the majority for failing to give effect to the compromise reached by the floor managers of the Code and for relying only on the legislative history prior to the joint amendment, namely the Senate reports. 792 F.2d at 834 (Reinhardt J. dissenting). In his view, the decision of the floor managers to adopt the House version of section 507(a)(6) insofar as it made excise taxes, including sales taxes, dischargeable explains why it was necessary in the Joint Statement to omit the language in the Senate reports regarding section 507(a)(6)(C) of the bill that states: "This category also includes excise taxes which a seller of goods and services is required to collect from a buyer and payover to a taxing authority." S.Rep. No. 989, 95th Cong., 2nd Sess. 71 (1978), U.S.Code Cong. & Admin.News 1978, p. 5857, *reprinted in Collier on Bankruptcy,* 15th ed., App. 3, Part V.

Judge Reinhardt also criticizes the majority for giving weight to interpretations of

the Bankruptcy Act. In the first instance, Judge Reinhardt noted that it would be unduly burdensome for Congress to specify an intent to change prior law when, in fact, it was rewriting the law in the bankruptcy field. Secondly, Judge Reinhardt noted that Congress was entirely unaware of *In re Fox*, 609 F.2d 178 (5th Cir.), *cert. denied*, 449 U.S. 821, 101 S.Ct. 78, 66 L.Ed.2d 23 (1980) and *Lawrence v. Lindley*, 65 Ohio St.2d 105, 418 N.E.2d 1351 (1981), since those cases were decided after the inactment of the 1978 Code.

Finally, Judge Reinhardt criticized *Rosenow* and *DeChiaro* stating:

> The court in *Rosenow* incorrectly believed that the Joint Statement reflected the view of the House of Representative only, rather than the views of both the House and Senate, and accordingly refused to rely on it. 715 F.2d at 280. Such an error makes the holding highly questionable, and of little utility here. In *DeChiaro*, the court also appeared to have misunderstood the nature of the Joint Statement and the compromise it represented, referring to it as mere "floor debate". 760 F2d at 436. The court, without adequate or convincing explanation, decided to rely instead on past interpretations of section 17(a)(1) and the legislative history of the Senate's version of the Bankruptcy Code. Its conclusion, therefore, constitutes somewhat of a non sequitur, and is hardly convincing.

760 F.2d at 836. *See also In re Monaco*, 47 B.R. 602 (Bankr.W.D.N.Y.1985), *rev'd*, *Kelly v. New York State Department of Taxes*, 61 B.R. 674 (W.D.N.Y.1985) (remanded to conform with *In re DeChiaro*, 760 F.2d 432 (2d Cir.1985)). The bankruptcy court in *Monaco* also criticized *Rosenow* for failing "to take into account the breadth and nature of the compromise which led to the enacted provision." 47 B.R. at 608. The court highlighted the intent of the House bill, reflected in the Report of the Committee on the Judiciary "to further modify 'and reduce' the prior advantages of the tax collector vis-a-vis the other creditors (and, concomitant therewith, to enhance the debtor's opportunity for a fresh financial start.") *Id. See* H.R. 95–595, 95th Cong., 1st Sess. (1977). The court compared the focus of the House bill (gauging the difficulty of monitoring tax compliance and limiting priority to instances where the tax collector had not had a reasonable time to enforce compliance) with that of the Senate bill which would have returned to the the the taxing authorities the priority they enjoyed prior to the 1966 amendments, which placed a time limitation on the nondischargeability of tax debts. *Id.*

## V. CONCLUSION

The Debtor relies upon the Joint Statement; two bankruptcy cases, *In re Tapp*, 16 B.R. 315 (Bankr.D.Alaska 1981) and *In re Boyd*, 25 B.R. 1003 (Bankr.S.D.Ohio 1982), both of which rely on the Joint Statement and emphasize the compromise nature of the final version of the Code; and a Seventh Circuit decision, *In re Groetken*, 843 F.2d 1007 (7th Cir.1988). In *Groetken*, the court concluded that the Illinois Occupation Tax was a tax measured on gross receipts and thus the Debtor's obligations under it were dischargeable where they became due more than three years before the petition was filed. Parenthetically, the same court in *Rosenow* concluded that the Illinois Use Tax was a nondischargeable trust fund tax. The court in *Groetken* held that section 507(a)(7)(A) "unambiguously applies to income taxes *and* gross receipts taxes." 843 F.2d at 1013. The court stated:

> Under section C's plain language, the Occupation Tax is not a "trust fund" tax. The Occupation Tax is imposed directly upon retailers. It is an obligation for which the retailer is solely accountable to the state. Unlike the Use Tax, retailers are not required to collect the tax from purchasers and, in turn, pay the taxes collected to the state.

*Id.*

The DOR correctly points out that the Debtor's reliance on *Groetken* is misplaced because unlike the Illinois Occupation Tax, the Massachusetts meals tax is required to be collected by the retailer. Although section 2 refers to an excise tax and gross

receipts, section 2, in conjunction with section 3(a), unambiguously requires retailers to collect taxes from purchasers and pay them over to the commissioner.

Thus, in the Court's view, the resolution of the issue turns on the weight to be given the Joint Statement, in light of the Senate reports emphasizing the dual nature of sales tax liabilities. Like the circuit courts considering the issue, the Court, while impressed with the thoughtfulness of the dissent in *Shank* finds that the remarks made by Congressman Edwards and Senator De-Concini do not provide a convincing basis for holding that the excise tax provision of section 507(a)(7)(E) of the Bankruptcy Code is an exception to section 507(a)(7)(C) when it comes to taxes, like the Massachusetts meals tax, that require retailers to collect taxes from customers and turn them over to the taxing authority. In other words, the Court finds that, in the words of the *DeChiaro* court, "Congress ... intended to differentiate between two categories of excise taxes: those not collected from third parties, which are dischargeable if stale, and those collected from third parties, which are not dischargeable." 760 F.2d at 435. Accordingly, the Court overrules the Debtor's objections to the proofs of claims filed by the DOR.