### In re Robert H. ST. HILAIRE, Debtor.

### Civ. A. No. 90–10080–WD.

United States District Court,
D. Massachusetts.

May 21, 1991.

---

George R. Desmond, Framingham, Mass., for Robert H. St. Hilaire.

Steven Berenson, Asst. Atty. Gen., Atty. Gen.'s Office, Boston, Mass., for Massachusetts Department of Revenue.

## MEMORANDUM AND ORDERS

WOODLOCK, District Judge.

The debtor, Robert St. Hilaire, brings this appeal from the decision of the United States Bankruptcy Court (Gabriel, C.J.), *In re St. Hilaire*, 102 B.R. 1 (Bkrtcy.D.Mass. 1989), overruling his objections to certain proofs of claim filed against his estate by the Department of Revenue of the Commonwealth of Massachusetts (DOR). Both parties agree that the sole issue on appeal is whether, as determined by the bankruptcy court, the Massachusetts sales tax assessed on meals (M.G.L. c. 64H, §§ 2, 3) is a nondischargeable tax entitled to priority under section 507(a)(7)(C) of the Bankruptcy Code of 1978. 11 U.S.C. § 507(a)(7)(C). For the reasons detailed below, I will affirm the bankruptcy court.

### I.

The facts are not in dispute. St. Hilaire operated a diner in Marlboro, Massachu-

setts, as a sole proprietor. On October 14, 1987, he filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code (Code). On January 27, 1988, the DOR filed four proofs of claim totalling $70,-397.36 for unpaid meals taxes incurred between July, 1976, and October 14, 1987, plus statutory interest and penalties. The debtor objected to these proofs of claim, arguing that all but $168.65 of the meals taxes were "excise taxes" assessed more than three years prior to the filing of the bankruptcy petition and were thus not entitled to priority under section 507(a)(7)(E) of the Code.[1] The DOR, however, maintained that the meals taxes were taxes "required to be collected or withheld and for which the debtor is liable in whatever capacity," entitled to priority under section 507(a)(7)(C) of the Code regardless of the timing of their assessment.[2]

In an extremely thorough and well-reasoned opinion, Chief Judge Gabriel concluded that the Massachusetts meals tax, requiring retailers to collect taxes from purchasers and then turn them over to the taxing authority, is the type of obligation which Congress intended to be nondischargeable under section 507(a)(7)(C) of the Code. *In re St. Hilaire*, 102 B.R. at 8. Thus, the bankruptcy court overruled St. Hilaire's objections to the proofs of claim filed by the DOR.

### II.

The challenge in this case is locating the section of the Bankruptcy Code pursuant to which the priority and dischargeability of the Massachusetts meals taxes should be determined. Section 507 of the Code provides in relevant part:

---

1. The bankruptcy court noted that the debtor had also argued the taxes were gross receipt taxes dischargeable after three years under section 507(a)(7)(A) of the Code, but that he "seem[ed] to abandon the argument" in his briefing. *In re St. Hilaire*, 102 B.R. at 1.

While Chief Judge Gabriel did include some references to gross receipt taxes in his decision, the debtor has not raised this argument on appeal, and states as his only argument in this court that the meals taxes are excise taxes and not "trust fund" taxes. See Brief of Debtor, Appellant, at 2.

2. In its brief on appeal, the DOR states that it had acknowledged in the bankruptcy court that "all but $4,489.35 of the amount" of its claims

were assessed more than three years prior to the petition. See Appellee's Brief, at 2 n. 2. It is unclear where the DOR got this number. Copies of the four proofs of claim appear at pages 4–7 of the record on appeal. These show that there is one claim for $168.65 for the period designated "Sep. 86"; the next most recent claim before that is for the period designated "Oct. 83," in an amount of $306.14. The bankruptcy court made no mention of the $4,489.35 figure, but proceeded on the debtor's statement that only $168.65 of the taxes claimed fell within the three year period. This implicit factual determination by the bankruptcy court is adequately supported by the record and the DOR, upon questioning at oral argument, did not dispute it.

(a) The following expenses and claims have priority in the following order: ...

(7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for— ...

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity; ...

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition; ...

11 U.S.C. § 507(a)(7).

Section 1322 of the Code requires that a Chapter 13 plan provide, *inter alia,* for full payment of all claims entitled to priority under section 507 "unless the holder ... agrees to a different treatment of such claim." 11 U.S.C. § 1322(a)(2). Debts incurred by an individual that fall within the provisions of section 507(a)(7) are excepted from the general discharge provisions of the Code. 11 U.S.C. § 523(a)(1)(A). Thus, according to the language of the statute, "stale" claims for excise taxes, those that are more than three years old, are not entitled to priority and are dischargeable, 11 U.S.C. § 507(a)(7)(E), while "trust fund" taxes [3] are given priority and are never subject to discharge in bankruptcy, 11

U.S.C. § 507(a)(7)(C). *See In re Shank,* 792 F.2d 829, 830 (9th Cir.1986).

The question, then, is whether the Massachusetts meals tax is an excise tax or a "trust fund" tax for purposes of applying the provisions of the Bankruptcy Code. Section 2 of M.G.L. c. 64H imposes a tax on retail sales of tangible personal property as follows:

An excise tax is hereby imposed upon sales at retail of tangible personal property in the commonwealth by any vendor at the rate of five per cent of the gross receipts of the vendor from all such sales of such property, except as otherwise provided in this chapter. The excise shall be paid by the vendor to the commissioner at the time provided for filing the return required by section sixteen of chapter sixty-two C.[4]

M.G.L. c. 64H, § 2. Section 3(a) specifies the manner in which this tax shall be collected, providing:

(a) Except as provided in paragraphs (b) and (c) of this section, reimbursement for the tax hereby imposed shall be paid by the purchaser to the vendor, and each vendor in the commonwealth shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed by this chapter, or an amount equal as nearly as possible or practicable to the average equivalent thereof; and such tax shall be a debt from the purchaser to the vendor, when so added to the sales price, and shall be recoverable at law in the same manner as other debts.

---

**3.** The so-called "trust fund" taxes include income taxes that an employer must withhold from an employee's pay, as well as employees' social security taxes. As will be discussed in greater detail below, however, the language of section 507(a)(7)(C) of the Bankruptcy Code does not limit itself only to those taxes. *See Rosenow v. State of Illinois Dept. of Revenue,* 715 F.2d 277, 279 (7th Cir.1983).

**4.** This version of the statute became effective on January 1, 1978. Prior to that date, the applicable statute in effect was M.G.L. c. 64B, § 2, which provided:

There is hereby levied and there shall be collected and paid a tax equivalent to five per cent of the amount charged for all meals, including cover and other charges, if any, for which the purchaser is charged as a total one

dollar or more, wherever furnished in the commonwealth. The state tax commission shall prescribe the method of determining the portion of an entire charge which is applicable to meals in the event that such entire charge is in part for meals and in part for lodging or any other item or service. The excise shall be paid by the taxpayer to the commissioner at the time and in the manner hereinafter provided.

M.G.L. c. 64B, § 2 (repealed 1977).

The post–1978 version of the statute was recently amended to include a tax on services as well as property to take effect March 6, 1991; the remainder of section 2 was unchanged. M.G.L. c. 64H, § 2 (Amended by Acts 1990, c. 265, § 1, effective Dec. 1, 1990).

M.G.L. c. 64H, § 3(a). Finally, section 16 imposes personal liability upon every person who has a duty to pay to the commissioner sales taxes collected from others. M.G.L. c. 64H, § 16.

Both St. Hilaire and the DOR agree with Chief Judge Gabriel that "[t]he search for the meaning of the statute begins with the actual language." *In re St. Hilaire,* 102 B.R. at 3 (citing *Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984)). The debtor argues that the plain language of the Massachusetts statute designates the meals taxes to be excise taxes collected by vendors from their sales, thus bringing the meals taxes squarely within the language of section 507(a)(7)(E). *See* M.G.L. c. 64H, § 2 ("An *excise* tax is hereby imposed ..." and "The *excise* shall be paid by the vendor to the commissioner ...") (emphasis supplied). The DOR, on the other hand, extracts from section 3(a) of the statute the requirement that the vendor collect the amount of the tax from the purchaser, which amount the vendor is then obligated (and under section 16, personally liable) to remit to the Commonwealth pursuant to section 2; this, the DOR argues, is "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity" under section 507(a)(7)(C). These conflicting arguments led Chief Judge Gabriel to conclude that "[t]he wording of section 507(a)(7) is unclear because sales tax liabilities may be owed personally by a purchaser or they may be owed by a retailer to the state, although incurred by the retailer's customers with the retailer being obligated to collect the taxes under the authority of the state." *In re St. Hilaire,* 102 B.R. at 3.

The courts of appeals in three circuits, applying these Code provisions, have concluded that sections 507(a)(7)(C) and (E) actually overlap for certain types of sales taxes. *In re Shank,* 792 F.2d at 832; *DeChiaro v. New York State Tax Commission,* 760 F.2d 432, 435 (2d Cir.1985); *Rosenow,* 715 F.2d at 279–80. The Seventh Circuit in *Rosenow* explained that the overlap occurs because there are two types of sales tax liabilities, "those which are owed personally by a debtor ... and those incurred by a retailer's customers, which are collected by the retailer under the authority of the state and then owed by the retailer to the state." 715 F.2d at 280. Noting the *Rosenow* court's explanation of the overlap, the Second Circuit stated:

> Obviously the overlap must be resolved since the two provisions lead to conflicting consequences. There are two possibilities. Congress may have intended to differentiate between two categories of excise taxes: those not collected from third parties, which are dischargeable if stale, and those collected from third parties, which are not dischargeable. Alternatively, Congress may have intended to differentiate between two categories of trust fund taxes: those that are also sales taxes and hence dischargeable if stale, and all other taxes collected from third parties, which are not dischargeable.

*DeChiaro,* 760 F.2d at 435; *see also In re Shank,* 792 F.2d at 832 (quoting *DeChiaro* ).

I conclude from the language and structure of the statute that Congress intended those sales taxes which, while perhaps denominated "excise" taxes, are functionally equivalent to the classic "trust fund" taxes to be governed by section 507(a)(7)(C). As the Seventh Circuit has noted, sales taxes that the debtor must collect from a third party and for which he or she is directly liable resemble the income and social security taxes unquestionably covered by 507(a)(7)(C), because the retailer holds taxes owed by his or her customers for the benefit of the state. *Rosenow,* 715 F.2d at 280. The plain language of section 507(a)(7)(C) is not limited to "trust fund" taxes so-called; rather, that provision addresses itself to any tax which meets its functional definition. *See id.* at 279–80.

To provide further perspective in resolving the statutory overlap, courts have adverted, as did Chief Judge Gabriel, to the legislative history of the Bankruptcy Act of 1978 (the Act). In doing so, however, those courts have recognized that the legislative history of the Act is, at best, extremely complicated. *In re Shank,* 792 F.2d at

831–33; *DeChiaro,* 760 F.2d at 434–36; *Rosenow,* 715 F.2d at 279–80. *See also generally* Klee, *Legislative History of the New Bankruptcy Code,* 54 Am.Bankr.L.J. 275 (1980). Chief Judge Gabriel thoroughly analyzed both that history and its treatment by the three circuit courts and concluded, as did they, that Congress intended to include within the "trust fund" provisions of section 507(a)(7)(C) those excise taxes, like the Massachusetts meals tax, collected from third parties. *In re St. Hilaire,* 102 B.R. at 4–8.

All three circuit courts examined the comparable section of the predecessor statute, section 17(a)(1) of the Bankruptcy Act as amended in 1966, which excepted from discharge taxes the debtor "has collected or withheld from others." *In re Shank,* 792 F.2d at 831; *DeChiaro,* 760 F.2d at 434; *Rosenow,* 715 F.2d at 280. Although that language did not explicitly refer to sales taxes, it was held broad enough to cover those sales taxes a vendor collected from his or her customers. *Id.* In creating the new section 507 in 1978, the House and Senate began with significantly different versions of the provisions for "trust fund" taxes and excise taxes. *In re Shank,* 792 F.2d at 831; *DeChiaro,* 760 F.2d at 435. As the *DeChiaro* court explained:

> Under the House bill, the trust fund tax provision covered only "taxes required to be withheld from wages, salaries, commissions, dividends, interest, or other payments that were paid by the debtor." H.R. 8200, 95th Cong., 1st Sess. § 507(6)(C) (1977), *reprinted in* App. 3 *Collier on Bankruptcy* (15th ed. 1985). The House bill also had a provision covering "excise taxes." *Id.* § 507(6)(E).... The Senate bill, on the other hand, included a trust fund tax provision not limited to withholding taxes. Rather, the Senate bill contained a provision similar to section 17a(1)(e), that excepted from discharge a tax "required to be collected or withheld" no matter how stale the debt. S. 2266, 95th Cong., 2d Sess. § 507(a)(6)(C) (1978), *reprinted in* App. 3 *Collier on Bankruptcy, supra.* The

> Senate bill had no provision explicitly covering excise taxes.

> The section ultimately enacted into law contained the Senate's version of the trust fund tax provision and the House's version of the excise tax provision.

*DeChiaro,* 760 F.2d at 435. This combination of the different versions of the different houses was the compromise reached by the Congress as a whole on section 507. Through the use of the Senate's language, it embodied a choice to continue in the revised Bankruptcy Code a functional analysis of sales taxes to determine whether they should be treated as classic "trust fund" taxes for purposes of dischargeability and priority.

I recognize that this compromise was accompanied by a Joint Statement from Senator DeConcini and Representative Edwards, the floor leaders of the bill in each house. *See* 124 Cong.Rec. 34016 (1978) (remarks of Senator DeConcini), *reprinted in* 1978 U.S.Code Cong. & Ad. News 6505, 6567; *and* 124 Cong.Rec. 32416 (1978) (remarks of Representative Edwards), *reprinted in* 1978 U.S.Code Cong. & Ad. News 6436, 6498. With reference to section 507(a)(7)(C), the Joint Statement simply provided, "[t]his category covers the so-called 'trust fund' taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes." The Joint Statement, thus, did not include additional language from the Senate Report discussing the "trust fund" taxes providing, "[t]his category also includes excise taxes which a seller of goods or services is required to collect from a buyer and pay over to a taxing authority." *In re Shank,* 792 F.2d at 831–32 (citing S.Rep. No. 989, 95th Cong., 2d Sess. 68–73 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News p. 5857). Regarding section 507(a)(7)(E), the Joint Statement defined excise taxes to include "[a]ll Federal, State or local taxes generally considered by this category, including sales tax, estate and gift tax, gasoline and special fuel taxes, and wagering and truck taxes." Given this anomalous failure to incorporate the Senate Report's description of the Senate's lan-

guage in the final bill's section 507(a)(7)(C), I find the Joint Statement offers no reliable guide to the proper interpretation of section 507(a)(7).[5]

All three circuit courts addressing the issue ultimately concluded that the broad language of section 507(a)(7)(C) as enacted, coupled with the lack of any evidence that Congress intended to change the policy of the predecessor statute concerning sales taxes, demonstrated an intent by Congress to differentiate between the two types of excise taxes and to except from discharge as a "trust fund" tax those excises required to be collected from third parties. *In re Shank*, 792 F.2d at 832; *DeChiaro*, 760 F.2d at 435; *Rosenow*, 715 F.2d at 280. The *Shank* court noted as well the "important public policy considerations" for this interpretation, concluding that there should not be any incentive given to an individual retailer suffering financial difficulties to default on sales tax liabilities, especially when those liabilities encompass the obligations of third parties. *In re Shank*, 792 F.2d at 832.

The debtor urges that the bankruptcy court was incorrect in its decision to adopt this majority position, arguing instead that reliance should be placed on two early bankruptcy court cases under the newly revised Code, *In re Boyd*, 25 B.R. 1003 (Bankr.S.D. Ohio 1982), and *In re Tapp*, 16 B.R. 315 (Bankr.D. Alaska 1981), and on the dissenting opinion in *In re Shank*. Both *Boyd*, 25 B.R. at 1004, and *Tapp*, 16 B.R. at 322, interpreted the Joint Statement to demonstrate a clear intent on the part of Congress to include sales taxes under the excise tax provision to the exclusion of any other provision. That interpretation, in light of the broad language of section 507(a)(7)(C), the equally broad language of

its predecessor statute, and the lack of any explanation for the omission from the Joint Statement of the sentence from the Senate Report, is tenuous and unsupportable. Similarly, because the *Shank* dissent also placed too much weight on the language of the Joint Statement, Chief Judge Gabriel properly rejected the debtor's argument that he adopt its reasoning. *In re Hilaire*, 102 B.R. at 7–8. In addition, I note that a Seventh Circuit case, *In re Groetken*, 843 F.2d 1007 (7th Cir.1988), relied upon by the debtor below, is instructively inapposite in its holding that the Illinois Occupation Tax, which imposes an obligation directly upon retailers and in no way requires the collection and holding of any tax from purchasers, is an excise tax under 507(a)(7)(E). 843 F.2d at 1013.

Consistent with Chief Judge Gabriel's analysis of the legislative history and the authority of the three court of appeals decisions, a number of other lower courts that have recently confronted sales tax provisions under section 507(a)(7) have reached the same conclusion as did the bankruptcy court here. *See, e.g., In re Taylor Tobacco Enterprises, Inc.*, 106 B.R. 441 (E.D.N.C. 1989); *In re King*, 117 B.R. 339 (Bkrtcy. W.D.Tenn.1990); *In re Avant*, 110 B.R. 264 (Bkrtcy.W.D.Texas 1989); *In re Gulf Consolidated Services, Inc.*, 110 B.R. 267 (Bkrtcy.S.D.Texas 1989). Most recently, the New Hampshire Bankruptcy Court followed Chief Judge Gabriel's decision to resolve the same question of the dischargeability of certain Massachusetts sales taxes under the Code provisions, deferring to the careful analysis of his "well-reasoned" opinion. *In re Morris Office Outfitters, Inc.*, 123 B.R. 694, 695 (Bkrtcy.D.N.H. 1991). Upon *de novo* review, I have also found his analysis compelling.

---

**5.** As the Eleventh Circuit has cautioned:
> ... the Bankruptcy Code's origins counsel in favor of emphasizing plain meaning interpretation of its provisions.
> Whatever degree of solicitude is due to legislative history materials in the usual case, "[s]trict adherence to the language and structure of the Act is particularly appropriate where, as here, a statute is the result of a series of carefully crafted compromises." ...
> Accordingly, the best indicators of congres-

sional intent in this narrow instance are the language and the structure of the Code itself, not the accompanying statements of legislators that carry the potential for reclaiming that which was yielded in the actual drafting compromise.

*In re Burns*, 887 F.2d 1541, 1545 (11th Cir.1989) (citations omitted). In taking this approach, the *Burns* court stated that it was refusing to read into provisions of section 523(a)(7) "more ... than the language will yield." *Id.*

### III.

Thus, for the reasons set forth above, I affirm the decision of the bankruptcy court that the Massachusetts meals tax is a nondischargeable priority "trust fund" tax under section 507(a)(7)(C) of the Bankruptcy Code.